## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROSALIND D. RAINEY-STIGGERS,                    Case No. 1:13-cv-517
      Plaintiff,                                Dlott, J.
                                              Litkovitz, M.J.

      vs.

COMMISSIONER OF                                 **REPORT AND**
SOCIAL SECURITY,                                **RECOMMENDATION**
      Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16) and the Commissioner's response in opposition (Doc. 23).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in September 2009 alleging disability since April 30, 2008, due to Complex Regional Pain Syndrome (CRPS), carpal tunnel syndrome, arthritis, chronic shoulder pain, back pain, shortness of breath, tendonitis and asthma. These applications were denied initially and upon reconsideration. Plaintiff through counsel requested and was granted a *de novo* hearing before administrative law judge (ALJ) Anne Shaughnessy. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On March 9, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4) (i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the

2

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] was insured for Medicare benefits on April 30, 2008, the alleged disability onset date, and she has remained insured for those benefits through December 31, 2010. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2008 with respect to her application under Title II.

> 2. The [plaintiff] has not engaged in substantial gainful activity since April 30, 2008, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

> 3. The [plaintiff] has the following severe impairments: partial thickness tear at the junction of the infraspinatus and supraspinatus of the left shoulder, chronic regional pain syndrome-left foot, carpal tunnel syndrome-right wrist, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: she can never climb ladders, ropes, or scaffolds, and she can occasionally stoop, kneel, and crouch. She can occasionally reach overhead. Mentally, the [plaintiff] can understand, remember, and carry out simple and some complex tasks in a setting where tasks are predictable and routine, and social interactions are occasional and superficial. She cannot work in situations that require resolving conflicts or supervising others. She can deal with routine changes.

3

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1957 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from April 30, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co.*

---

[1]Plaintiff's past relevant work was as a teacher, stock clerk, material handler, EKG technician, and orderly. (Tr. 20).

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform light jobs such as assembler of small products, housekeeper/cleaner, and packaging line worker. (Tr. 21).

*v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Evidence

The following is a brief recitation of the pertinent medical evidence of record according to plaintiff:

> In May 2002, plaintiff suffered a crush injury to her left foot when a roll of vinyl flooring fell on it. (Tr. 405, PAGEID# 433). In a December 11, 2002 office record, Dr. Mohab Foad, treating physician, reported he was "concerned for a reflex sympathetic dystrophy in plaintiff's foot, as she was still experiencing pain and had "swelling about the medial and lateral malleolus, hypersensitivity to touch over the dorsum over her foot, and diffuse tenderness to palpation throughout the mid foot." (Tr. 379, 563, 568, PAGEID# 407, 591, 596). The treating physician prescribed a 3-D boot and plaintiff was allowed to bear weight as tolerated. (*Id.*). Since December 2002, plaintiff has required the use of a boot, splint or brace for the left foot and uses "a cane to ambulate due to the [im]balance from the boot." (Tr. 375, 379, PAGEID# 403, 407).

The diagnosis of CRPS is persistent throughout plaintiff's treatment for the left

5

foot. (Tr. 379, 562-568, PAGEID# 407, 590-596). Her medical records consistently list subjective symptoms and objective signs of CRPS in plaintiff's left foot, such as: swelling; burning pain; diminished neurological sensory to light touch; decreased range of motion along the toes; skin changes, scaly in nature; antalgic gait, favoring the right side; throbbing pain; [and] edema in the left ankle and foot. (Tr. 341, 347, PAGEID# 369, 375).

On September 10, 2007, Plaintiff presented to University Hospital complaining of sharp pain in the left shoulder and an inability to raise her arm above shoulder level. (Tr. 339, PAGEID# 367). On April 9, 2008, Plaintiff again sought treatment for left shoulder pain, which an MRI revealed to be a partial-thickness tear at the supraspinatus infraspinatus junction with associated tendinopathy. (Tr. 327, 334, PAGEID# 355, 362). Plaintiff continued to have pain in her left shoulder pain since that time. (Tr. 383, 415, PAGEID# 411, 443).

(Doc. 16 at 2-3).

### E. Specific Errors

On appeal, plaintiff argues (1) the ALJ erred by not finding the combination of plaintiff's impairments meets or medically equals the severity of the criteria of a listed impairment; (2) the ALJ's assessment of plaintiff's credibility is not supported by substantial evidence; (3) the ALJ failed to consider plaintiff's pain to be a disabling condition; and (4) the ALJ failed to give proper weight to the opinion of plaintiff's treating mental health therapist. (Doc. 16).

### 1. Whether the ALJ's Listings finding is supported by substantial evidence.

For her first assignment of error, plaintiff argues the ALJ erred at Step Three of the sequential evaluation process in determining that her foot, wrist, and shoulder impairments did not meet or medically equal Listing 1.02. Listing 1.02 provides as follows:

1.02. *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints(s). With:

6

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.02. An "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*., § 1.00B2b(1). To be found capable of effective ambulation, the individual must be able to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school." *Id*., § 1.00B2b(2). Examples of ineffective ambulation include requiring a walker, two crutches or two canes, and the inability to walk a block at a reasonable pace on rough or uneven surfaces. *Id*. The "inability to perform fine and gross movements effectively" under Listing 1.02B is defined as "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id*., § 1.00B2c. To be found capable of using upper extremities effectively, the individual must be able to sustain functions like "reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." *Id*. Examples of an inability to perform fine and gross movements effectively include "the inability to prepare a simple meal and feed oneself, the inability to take

7

care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Id.*

The ALJ concluded that plaintiff did not meet or equal Listing 1.02 because "there is no evidence that the [plaintiff's] rotator cuff tear or CTS [carpal tunnel syndrome] has resulted in an inability to perform fine and gross movements effectively, as required by the Listing." (Tr. 14). Plaintiff argues the ALJ erred in her Listings finding because the objective and other evidence of record establishes that her foot impairment results in the inability to ambulate effectively for purposes of Listing 1.02A. Plaintiff further asserts the ALJ's conclusion lacks substantial support in the record because plaintiff requires the constant use of a cane to ambulate and has had to wear a 3-D boot on her left foot since sustaining a crush injury in 2002. Plaintiff alleges she is further limited by wearing a brace on her right wrist for carpal tunnel syndrome and by the inability to raise her arm above shoulder level because of a shoulder injury and pain, thereby meeting Listing 1.02B. Plaintiff also challenges the adequacy of the ALJ's cursory Step Three discussion. (Doc. 16 at 7-9).

Plaintiff bears the burden of proving that her impairments meet or equal a listed impairment. *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). To meet this burden, plaintiff must put forth evidence establishing that she meets all of a listing's criteria. *Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) (citing 20 C.F.R. § 416.924(a); *Hale v. Sec'y of H.H.S.,* 816 F.2d 1078, 1083 (6th Cir. 1987)). Plaintiff may also demonstrate disability by establishing that her "impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Foster v. Halter,* 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan,* 493 U.S. at 531).

8

Regardless, "[t]his decision must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques." *Land v. Sec'y of H.H.S.,* 814 F.2d 241, 245 (6th Cir. 1986) (citing 20 C.F.R. § 404.1526(b)).

Plaintiff has not met her burden of establishing that her impairments meet or medically equal a listed impairment. Plaintiff has failed to present specific medical findings to satisfy the criteria for either Listing 1.02A or Listing 1.02B.

For purposes of Listing 1.02A, plaintiff has not established an inability to ambulate effectively as defined in listing 1.00B2b. Although plaintiff wears a 3-D boot and uses a cane to ambulate, use of a single cane does not establish that plaintiff is unable to ambulate effectively for purposes of meeting or medically equaling Listing 1.02A. *See* 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00B2b(1), (2) (ineffective ambulation is found where a claimant's use of a hand-held assistive device limits the functioning of *both* upper extremities, such as requiring a walker or two canes to walk). Plaintiff's use of a single cane does not satisfy the listing's requirement. *Id. See also Jackson v. Comm'r of Soc. Sec.*, No. 07-14184, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6, 2009). In addition, the May 2010 consultative examination by Dr. William O. Smith supports a finding that plaintiff is able to effectively ambulate. Dr. Smith observed that plaintiff walked normally without the cane with her left foot and displayed a normal range of motion of her ankle and foot on the left side. (Tr. 17, 473). Although plaintiff contends that chronic pain and stiffness has negatively impacted her ability to walk, she has cited to no medical evidence establishing the criteria of Listing 1.02A.

Plaintiff has also failed to establish she meets the criteria of Listing 1.02B, which requires limitation of motion or other abnormal motion of both upper extremity joints, as well as findings

of joint space narrowing, bony destruction, or ankylosis of the affected joints demonstrated by appropriate medically acceptable imaging.  Although plaintiff has a history of a left rotator cuff tear, medical imaging failed to show joint space narrowing, bony destruction, or ankylosis of the shoulder.  In May 2007, x-rays of plaintiff's left shoulder showed normal left glenohumeral joint and scapula and no acute fracture or dislocation of the shoulder.  (Tr. 17, 344).  While an MRI in April 2008 showed a partial-thickness tear in plaintiff's rotator cuff joint and associated tendinopathy (Tr. 329, 334), x-rays of the left shoulder in May 2009 showed no abnormal calcifications, fracture, or other bony alterations and the impression was "normal shoulder."  (Tr. 18, 410).  In addition, the ALJ determined that plaintiff's carpal tunnel syndrome of the right wrist was a severe impairment, but she noted that x-rays of the right hand showed no radiographic abnormality.  (Tr. 18, 345).

Nor has plaintiff identified evidence establishing an inability to effectively perform fine and gross movements in both upper extremities in accordance with Listing 1.02B, which requires "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.*, § 1.00B2c.  Plaintiff reported she is able to prepare a simple meal and feed herself, take care of her personal hygiene, do light household chores, and shop for food and personal items.  (Tr. 257-259).  20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00B2c.  Also, in May 2010, Dr. Smith determined that plaintiff had 5/5 strength in all muscle groups in her right shoulder and arm and had estimated 4/5 strength on the left.  (Tr. 471-474).  Dr. Smith noted that plaintiff's grasp was normal on both sides but that she "refused to make any effort" on manipulation, pinch, and fine coordination.  (Tr. 472).  Dr. Smith also noted no atrophy in either of plaintiff's shoulders, arms,

10

wrists or hands. (Tr. 473). While plaintiff alleges she is unable to raise her left arm above

shoulder level and that she experiences sharp pain (Tr. 339), she does not address Dr. Smith's

concerns that she was not making any effort on her physical examination. In any event, even if

plaintiff experiences limitations in her left shoulder, plaintiff has not directed the Court to any

evidence establishing her right hand is functionally limited to the extent she would be unable to

perform fine and gross movements for purposes of meeting Listing 1.02B, which requires an

extreme loss of function in *both* upper extremities.

Lastly, although the ALJ's Listing 1.02 discussion is brief, the ALJ made sufficient

factual findings elsewhere in her decision to support her Step Three conclusion and to enable the

Court to meaningfully review her decision. *See Forrest v. Comm'r of Soc. Sec.,* ___ F. App'x ___,

2014 WL 6185309, at *6 (Nov. 17, 2014) (and cases cited therein).

Plaintiff also contends that the ALJ erroneously failed to consider the combined effects of

her impairments in determining whether she medically equaled a listed impairment. (Doc. 16 at

9). Plaintiff argues that in addition to the above physical impairments, she suffers from asthma

and a major depressive disorder that when considered in combination show she is disabled. *Id.* at

10. To the extent plaintiff relies on the opinion of her treating mental health therapist for this

argument, it is without merit. For the reasons explained *infra*, the ALJ's decision giving less

weight to the opinion of plaintiff's therapist is supported by substantial evidence. In any event,

"[a]n ALJ's individual discussion of multiple impairments does not imply that [s]he failed to

consider the effect of the impairments in combination, where the ALJ specifically refers to a

'combination of impairments' in finding that the plaintiff does not meet" a listed impairment.

*Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). *See also Hill v.*

11

*Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). Here, the ALJ specifically found that plaintiff did not have a "combination of impairments that meets or medically equals one of the listed impairments[.]" (Tr. 14). Thus, plaintiff's argument finds no support in the record.

The ALJ's conclusion that plaintiff's impairments do not meet or medically equal Listing 1.02 is supported by substantial evidence and should therefore be affirmed.

**2. Whether the ALJ's credibility finding and assessment of plaintiff's complaints of pain is supported by substantial evidence.**

As plaintiff's second and third assignments of error are interrelated, they will be considered together. In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id.* at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical

impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.*

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of plaintiff's doctors. *Felisky*, 35 F.3d at 1040. Additional specific factors relevant to plaintiff's allegations of pain include her daily activities; the location, duration, frequency and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate her pain or other symptoms; treatment other than medication plaintiff has received for relief of her pain; and any measures the plaintiff uses to relieve her pain. *Id.* at 1039-40; 20 C.F.R. § 404.1529(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish she is disabled, *Duncan,* 801 F.2d at 853, statements about her pain or other symptoms are not sufficient to prove her disability. 20 C.F.R. § 404.1529(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id.*

The ALJ determined that plaintiff's allegations of disabling pain were not fully credible. (Tr. 17). The ALJ found that plaintiff's subjective allegations of pain and limitations were inconsistent with the objective medical evidence. (*Id.*). The ALJ also noted that plaintiff was able to work for several years following the 2002 injury to her foot despite complaints of severe foot pain and plaintiff had not seen a doctor for her physical impairments, aside from Emergency Room visits, since 2008. (Tr. 17-18). The ALJ further determined that plaintiff's alleged

13

limitations from her mental impairment were inconsistent with the medical evidence of record, and her activities of daily living belied her allegations of disability.  (Tr. 18).

Plaintiff argues the ALJ improperly considered her lack of medical treatment because plaintiff testified she did not seek regular treatment due to a lack of medical insurance.  (Doc. 16 at 12).  Social Security Ruling 96-7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  Nonetheless, a claimant's failure to seek or pursue treatment may be a factor weighing against the claimant's credibility.  As the Sixth Circuit recently noted:

> To the extent that the ALJ may have considered the absence of contemporaneous evidence in evaluating Claimant's credibility as to his allegedly disabling pain, this was not improper.  In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.  A failure to do so may cast doubt on a claimant's assertions of disabling pain.  *See Williams v. Bowen,* 790 F.2d 713, 715 (8th Cir. 1986); *see also Kimbrough v. Sec'y of Health & Human Servs.,* 801 F.2d 794, 797 (6th Cir. 1986). . . .  Claimant has not asserted that he could not at least afford an examination during the relevant period, regardless of his ability to afford continuing treatment.  Finally, the ALJ's opinion does not suggest that he regarded Claimant's failure to seek medical examination or treatment as "a determinative factor" in his credibility assessment.

*Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 846 (6th Cir. 2004).

Here, the ALJ acknowledged plaintiff's testimony that she did not have medical insurance.  (Tr. 16).  However, the ALJ also noted that plaintiff occasionally sought treatment at the Emergency Room where she was discharged with medication for symptomatic relief with no additional treatment recommended by physicians or sought by plaintiff.  (Tr. 18, Tr. 500-502).

14

Plaintiff's failure to seek treatment for a period of time is a factor weighing against her credibility. *Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1082 (6th Cir. 1987). Like the claimant in *Strong,* plaintiff has not claimed she could not at least afford an examination or some type of treatment during the years she went without any treatment for her allegations of disabling pain. Nor has plaintiff provided any evidence she attempted to access free or subsidized medical services at a hospital or clinic and was denied such access. The absence of medical treatment or examination was but one factor in the ALJ's overall credibility analysis and there is no evidence that this factor was "determinative" in that analysis. Thus, the ALJ did not err by taking plaintiff's lack of treatment into account when assessing the severity of her physical impairments.

Plaintiff also asserts the ALJ improperly considered her activities of daily living. Plaintiff states she performed these activities at her own pace and her daily activities did not establish she could engage in a regular, sustained 40-hour work week. (Doc. 16 at 13).

Contrary to plaintiff's argument, the ALJ did not equate plaintiff's daily activities with the ability to do sustained work activity; rather, the ALJ noted that plaintiff's allegations about her activities were inconsistent and called into question the credibility of her allegations of disability. (Tr. 18). Plaintiff testified she spent the majority of the day sitting on the couch and watching television with her legs elevated. She also testified that she could not perform household chores or grocery shop. (Tr. 18, 46). However, in her March 2010 Function Report and her April 2010 psychological examination, plaintiff reported she was able to prepare simple meals on a daily basis; perform light household chores, including washing dishes and dusting; and shop for food and personal items on a monthly basis. (Tr. 18, 257-259, 437). The ALJ

15

noted this discrepancy and reasonably concluded that the discrepancy suggested "possible exaggeration in the [plaintiff's] testimony and that her physical impairments are not as severe as alleged." (Tr. 18). *See Blacha v. Secretary of Health and Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990) (the ALJ may consider the plaintiff's household and social activities in evaluating the plaintiff's credibility). The Court finds no error in the ALJ's consideration of this evidence.

Finally, plaintiff contends the ALJ failed to give proper consideration to the disabling effects of plaintiff's chronic pain, citing to case authority from the Southern District of Iowa and Northern District of Alabama, neither of which sets forth the proper standard for evaluating complaints of pain in the Sixth Circuit under *Duncan*.[3] (Doc. 16 at 13). Plaintiff asserts that the objective findings and her subjective reports of symptoms clearly fit the description of CRPS, which is noted throughout the record, and the ALJ therefore should have found her complaints of pain credible. However, plaintiff cites no evidence in support of this argument nor explains how the record evidence satisfies the controlling *Duncan* pain standard.

The ALJ acknowledged that plaintiff has several underlying medical conditions, including CRPS of the left foot, and determined each to be a severe impairment. Yet, the fact that plaintiff has been diagnosed with an underlying medical impairment says nothing about the limitations resulting from such an impairment or whether the impairment is of such severity that it would reasonably be expected to produce allegedly disabling pain. *Hill,* 560 F. App'x at 551 ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of medical impairment says nothing about severity of the condition). Aside from generally asserting that

---

[3]Plaintiff asserts that "consistent complaints of pain" can be considered "objective evidence" in a Social Security disability claim, citing *McCray v. Barnhart*, 331 F. Supp.2d 772 (S.D. Iowa 2004). This is not the law in the Sixth Circuit.

her symptoms and the "objective evidence" fit the CRPS diagnosis (Doc. 16 at 14), plaintiff has

cited to no evidence nor presented a developed argument to support her contention that the ALJ's

assessment of plaintiff's complaints of disabling pain is not supported by substantial evidence.

After careful review of the record, the Court finds the ALJ properly applied the two-part

*Duncan* standard in evaluating plaintiff's subjective complaints of pain and other purportedly

disabling symptoms.  The ALJ conducted a thorough evaluation of plaintiff's complaints in light

of the objective medical evidence of record, her reported daily activities, and other pertinent

factors.  Substantial evidence supports the ALJ's determination based on the medical and other

evidence of record that plaintiff does not suffer from disabling pain and other symptoms.

Plaintiff's second and third assignments of error should be overruled.

### 3.  Whether the ALJ failed to give proper weight to the opinion of plaintiff's treating mental health therapist.

Plaintiff's fourth assignment of error asserts the ALJ improperly weighed the opinions of

the mental health sources in assessing plaintiff's limitations from her mental impairments.

Plaintiff alleges the ALJ erred by giving the opinions of the consultative psychologist, Jennifer

Stoeckel, Ph.D., and state agency reviewing psychologist, Bruce Goldsmith, Ph.D., "great"

weight while giving the opinion of her treating cognitive therapist, Christopher Reynolds, CT,

"less" weight.  Plaintiff asserts she "had 60-minute treatment sessions with CT Reynolds on a

weekly or bi-weekly basis for about a month prior to his completion of the Mental Impairment

Questionnaire." (Doc. 16 at 15, citing Tr. 491, PAGEID# 519).  Mr. Reynolds assessed extreme

limitations in plaintiff's ability to perform activities of daily living and marked limitations in

plaintiff's ability to maintain social functioning and concentration, persistence, and pace (Tr.

495) which, if fully credited, would render plaintiff disabled.  Plaintiff alleges Mr. Reynolds'

17

opinion was entitled to greater weight than the opinion of the one-time or state agency reviewing

psychologists based on the greater number of contacts he had with plaintiff.

"The Commissioner has elected to impose certain standards on the treatment of medical

source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These standards, set forth

in administrative regulations, describe (1) the various types of evidence that the Commissioner

will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment,

20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). This evidence may include

"medical opinions, which 'are statements from physicians and psychologists . . . that reflect

judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms,

diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do

despite his or her impairments." *Id.* (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations set forth three types of acceptable medical sources upon which

an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 C.F.R. §§

404.1502, 416.902. When treating sources offer opinions, the Social Security Administration is

to give such opinions the most weight and is procedurally required to "give good reasons in [its]

notice of determination or decision for the weight [it gives the claimant's] treating source's

opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement

only applies to treating sources. *Id.* at 876. The opinion of a non-treating but examining source

is entitled to less weight than the opinion of a treating source, but is generally entitled to more

weight than the opinion of a source who has not examined the claimant. *Ealy v. Comm'r of Soc.

Sec.,* 594 F.3d 504, 514 (6th Cir. 2010). *See also Smith,* 482 F.3d at 875. When deciding the

18

weight to give a non-treating source's opinion, the ALJ should consider the medical specialty of

the source, how well-supported by evidence the opinion is, how consistent the opinion is with the

record as a whole, and other factors which tend to support or contradict the opinion.  20 C.F.R.

§§ 404.1527(c), 416.927(c).  Because a non-examining source has no examining or treating

relationship with the claimant, the weight to be afforded the opinion of a non-examining source

depends on the degree to which the source provides supporting explanations for his opinions and

the degree to which his opinion considers all of the pertinent evidence in the record, including

the opinions of treating and other examining sources.  *Id.*

    The ALJ must consider all available evidence in an individual's case record, including

evidence from medical sources.  Social Security Ruling (SSR) 06-03p, 2006 WL 2329939

(Aug. 9, 2006).[4]  The term "medical sources" refers to both "acceptable medical sources" and

health care providers who are not "acceptable medical sources."  *Id.* (citing 20 C.F.R. §§

404.1502, 416.902).  Licensed physicians and licensed or certified psychologists are "acceptable

medical sources."  *Id.* (citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)).  Only "acceptable

medical sources" as defined under 20 C.F.R. §§ 404.1513(a), 416.913(a) can provide evidence

establishing the existence of a medically determinable impairment, give medical opinions, and be

considered treating sources whose medical opinions may be entitled to controlling weight.  *Id.*

    Cognitive therapists, like Mr. Reynolds, are not "acceptable medical sources" and instead

fall into the category of "other sources."  20 C.F.R. §§ 404.1513(d), 416.913(d).  Information

---

[4]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the
Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and
interpretations' adopted by the Commissioner.  20 C.F.R. § 402.35(b)(1).  In *Wilson*, 378 F.3d at 549, the court
refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as
Social Security Regulations, but *assumed* that they are.  [The Court] makes the same assumption in this case."
*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of an individual's impairment and how it affects the individual's ability to function. SSR 06-03p.  It may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. SSR 06-03p. Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in a professional capacity include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id. See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p. The ALJ "should *explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (emphasis added).

In giving "less weight" to the opinion of Mr. Reynolds, the ALJ noted that Mr. Reynolds was not an "acceptable" medical source. The ALJ also determined that Mr. Reynolds' opinion was based on his evaluation of plaintiff which began only one month prior to his assessment. (Tr. 19). Finally, the ALJ determined that Mr. Reynolds' assessment was inconsistent with the medical evidence of record as a whole. *Id.*

20

The ALJ's decision to give less weight to the opinion of plaintiff's therapist is supported by substantial evidence. The ALJ appropriately considered the source of the information, the length of treatment, and the consistency of Mr. Reynolds' opinion in determining to give it less weight than the opinions of Drs. Stoeckel and Goldsmith. As the ALJ correctly assessed, Mr. Reynolds is not an "acceptable" medical source but is an "other" source. As such, his opinion was not entitled to any special deference in assessing plaintiff's functional limitations. Also, the ALJ reasonably determined that Mr. Reynolds' opinion was based on a limited number of sessions with plaintiff over the span of only one month, thereby undermining plaintiff's claim that Mr. Reynolds was in a better position to provide "insight on the severity" of plaintiff mental health impairments and her functionality. SSR 06-03p. In addition, Mr. Reynolds failed to provide any supporting treatment notes or explanation to support the extreme limitations he assessed. (Tr. 493-495).

Finally, as the ALJ reasonably noted, Mr. Reynolds' opinion was not consistent with the other medical evidence of record. Dr. Stoeckel evaluated plaintiff in April 2010 and diagnosed major depressive disorder that was moderately severe without psychotic features and opined that plaintiff could perform simple one and two-step job instructions. Dr. Stoeckel assessed that plaintiff had moderate limitations in her ability to maintain concentration, persistence, or pace, relate to others including co-workers and supervisors, and tolerate the stress and pressure associated with day-to-day work activity. (Tr. 19, 438-41). Dr. Stoeckel noted that plaintiff is "fairly independent in ADLs from an emotional standpoint. She attends church once a week, but indicates she is depressed most of the day, more days than not. She is engaging in personal care and relating to her family, but is more isolated and restricted." (Tr. 440). Dr. Stoeckel also

noted that plaintiff "had a previous episode of depression after she had a miscarriage in 1980 and required psychiatric admission, but [has had] no intervening mental health" treatment since then. (Tr. 440). Dr. Stoeckel stated that "[c]ognitively, I suspect average to above average abilities, but diminished mental capacities secondary to depression." (Tr. 440).

That same month, state agency reviewer Dr. Goldsmith opined that plaintiff's depressive disorder caused mild to moderate limitations. (Tr. 19, 453, 457-58). Dr. Goldsmith noted that although plaintiff alleged depression dating back some thirty years, she denied any treatment since a reported hospitalization in 1980 and never complained of depression to her doctors. (Tr. 459). Dr. Goldsmith considered and gave Dr. Stoeckel's opinion "significant weight" given the absence of any treating source opinions and its consistency with the other record evidence. Dr. Goldsmith opined that plaintiff can "understand, remember, follow, and sustain simple and some complex tasks in a setting where tasks are predictable and routine, and social interactions are occasional and superficial." (Tr. 459). Dr. Goldsmith also opined that plaintiff "cannot work in situations that require resolving conflicts or supervising others" but "can deal with routine changes [just not] rapid or unexpected changes." (Tr. 459). Both Drs. Stoeckel and Goldsmith are "acceptable medical sources" and the ALJ reasonably concluded that their opinions were consistent with the signs and findings on plaintiff's consultative psychological evaluation and the record as a whole. (Tr. 19). Plaintiff's fourth assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: _2/2/15_

Karen L. Litkovitz
United States Magistrate Judge

22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ROSALIND D. RAINEY-STIGGERS,
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:13-cv-517
Dlott, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).